# EXHIBIT A

COMMONWEALTH OF KENTUCKY
JEFFERSON COUNTY CIRCUIT COURT
CIVIL ACTION NO.: _____

**VERIFIED COMPLAINT**

| | |
|---|---|
| WILLIAM PATRICK CASADA<br>7622 AVALON GARDEN DRIVE<br>LOUISVILLE, KY 40228 | **PLAINTIFF** |
| v. | |
| GREAT DAY INMPROVEMENTS LLC<br>700 E HIGHLAND RD<br>MACEDONIA, OH 44056 | **DEFENDANT** |

Registered Agent:
National Registered Agents, Inc.
306 W. Main Street
Suite 512
Frankfort, KY 40601

\*\*\*\*   \*\*\*\*   \*\*\*\*

Comes now the Plaintiff, William Patrick Casada ("Mr. Casada" or "Plaintiff"), by and through counsel, and for his Complaint against Great Day Improvements LLC ("GDI" or "Defendant"), states as follows:

**JURISDICTION AND VENUE**

1. Mr. Casada lives and resides in Louisville, Kentucky and is a resident of Jefferson County, Kentucky.

2. GDI is incorporated in Delaware and has its principal place of business in Ohio.

3. GDI avails itself to the jurisdiction of this Court under KRS § 454.210(2)(a)(1), by transacting any business in the Commonwealth.

4. Plaintiff's causes of actions arise under the Kentucky Civil Rights Act, as codified in KRS Chapter 344. As such, pursuant to KRS § 344.450 this action must be and is being brought in the Circuit Court in the county in which the alleged action arose.

## FACTUAL ALLEGATIONS

5. August 5, 2019, Mr. Casada was employed by GDI. (See Exhibit 1).

6. GDI sells, manufactures, and installs sunrooms and windows.

7. Mr. Casada was employed by GDI as a Regional Sales Manager. (See Exhibit 2).

8. Mr. Casada's base salary was $90,000 per year.

9. Mr. Casada's benefits package allowed him to be eligible for monthly and quarterly bonuses valued at 45% of his base salary, as well as receiving a monthly phone stipend and monthly car allowance.

10. Mr. Casada attended Sales Representative training in Macedonia, Ohio from August 12, 2019 until August 16, 2019. The purpose of this training was so that Mr. Casada could, among other things, learn what his Sales Representatives would be doing, and what the product was that his Sales Representatives would be selling.

11. After this training, Mr. Casada was to begin training to be a Regional Sales Manager. There was no formal training, but Mr. Casada was going to be shadowing other Regional Sales Managers to learn what the job entailed.

12. On August 19, 2019, Mr. Casada had a heart attack. Mr. Casada needed two (2) stents to be put in him because there was 100% blockage to Mr. Casada's heart.

13. On August 21, 2019, Mr. Casada was released from the hospital. He then took ten (10) days off from work per his doctor's orders. (See Exhibit 3).

14. Upon returning to work, he discussed his doctor's orders with the Midwest Regional Manager, Steve Bell ("Mr. Bell"). Mr. Casada's doctor's orders stated that he could not drive for a period of six (6) weeks. When Mr. Casada told Mr. Bell that information, Mr. Bell said "your job description states that you must drive from branch to branch, so you need to make a decision about your job because the company will frown upon you not driving for six (6) weeks."

15. Mr. Casada, having bills to pay, decided that he could not lose his job, so he continued to drive to each branch (Louisville, Cincinnati, and Indianapolis) that he covered. He also further inquired about the Regional Sales Manager Training because unless he was being flown out to the other state where the training was, he could not attend. Mr. Casada was told that he would be sent out there once things slowed down.

16. Mr. Casada knew that he would be fired if he did not risk his health because he previously overheard GDI management talking about other employee's heart attacks, and they were talking about the heart attacks in a negative way. For example, GDI management was saying that it is a burden to the company because of rehabilitation and doctor's appointments. Further, GDI's management forced Mr. Casada to put pressure on a Sales Representative who had a heart attack earlier in the year of 2019. Mr. Casada was told "he (the employee) just hasn't been the same since the heart attack." Due to the pressure put on the employee from GDI, he eventually resigned.

17. In September, October, and November of 2019, Mr. Casada's team exceeded the performance forecasts that GDI projected. His team actually set GDI records in the Midwest Region.

18. After Mr. Casada's heart attack, the company became more nitpicky, and began looking for a reason to terminate him. But, as mentioned above, Mr. Casada was going above and beyond expectations, so the company could not terminate him.

19. In December of 2019, Mr. Casada's team fell below the performance forecasts. However, this was expected because of the holiday, and GDI not producing leads that were forecasted.

20. Also, in December of 2019, GDI implemented a new company wide Sales Representative Agreement ("Agreement") that all of the Regional Sales Managers were to present to their teams at a meeting in January.

21. The Agreement changed two (2) things for the Sales Representatives in the company. First, it changed the bonus structure. Second, it changed the way commissions were to be paid to the employees. More specifically, if the employees were terminated, or left by their own accord, they would not receive the commissions that they were owed. GDI paid their employee's commissions in two (2) parts. Their employees would receive half of their commission upon completing the sale, and the other half upon the completion of the installation.

22. Mr. Casada held a meeting with his Sales Representatives on January 6, 2020. He told them about the changes that were going to be made, and he received no push back about the bonus structure but did about the commissions. In fact, six (6) of his nine (9) employees refused to sign the agreement and began boycotting GDI until they got rid of that policy.

23. Mr. Casada immediately began speaking with GDI's upper management about this and went to them with a plan that outlined how to keep his employees and GDI happy. GDI

did not listen to Mr. Casada's plan and as a result Mr. Casada's regional sales started to decline.

24. On January 21, 2019, Mr. Casada was called by Justin Hennessey, his direct supervisor, and was informed that he was being terminated immediately for performance issues. The performance issues were merely a pretext. After, Mr. Casada had his heart attack, the company wanted him gone, and this was the first opportunity they had to do so.

25. In addition to performance issues, Justin Hennessey told Mr. Casada that, "you haven't been spending time with your new hires." Justin Hennessey was referring to the two (2) new Sales Representatives that Mr. Casada had just hired; however, Mr. Casada had just spent time with his new hire in Cincinnati, Brigid Niesel, on Jan. 15, 2019 and his new hire in Indianapolis, Melissa Bledsoe, on January 16, 2020. In addition to those times, Mr. Casada had been scheduling weekly meetings, and daily calls Brigid and Melissa, so it is clear that GDI's reasoning was just a pretext to fire Mr. Casada because of his heart attack.

26. Mr. Casada was told that no other region was having sales issues, and that their Sales Representatives signed the Agreement with no issues. He was further told that the reason that his team did not sign the Agreement was because he "focused too much on the commissions issue."

27. GDI's own policies state that if there were performance issues, that the employee was to be placed on a Performance Improvement Plan ("PIP"), and their policy also states that if there was a behavioral problem that the employee would be given three (3) warnings, a verbal, a written, and then a final. Mr. Casada was not placed on a PIP nor was he ever warned.

Presiding Judge: HON. MARY SHAW (630277)

COM : 000005 of 000013

Filed   20-CI-004930   08/24/2020   David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
09/24/2020 09:44:29 AM
89941

28. Since Mr. Casada was terminated, GDI has redlined the commissions change out of their Sales Representative Agreement. GDI redlined the change because employees in other regions found out what the change was, and would not stand for it, much like Mr. Casada's employees. Previously, the managers in the other regions had a meeting with their employees where they did not comment on the change, nor allow their employees to read the Agreement. The managers only spoke about the bonus structures change, and a change that only affected the employees if they were new.

29. Since Mr. Casada's termination, he has reached out to GDI's Human Resources department on multiple occasions asking for a termination letter, and for a breakdown of his final compensation – which he has yet to receive (See Exhibit 4). Mr. Casada also wants to return GDI property that he has to GDI. GDI will not respond to Mr. Casada's emails but they will go as far as to have employees from their office go to Mr. Casada's home. While at Mr. Casada's home, the employees will pound on the door – for forty-five (45) minutes at a time. When Mr. Casada does not answer the door, they leave handwritten notes on his door, requesting that he comes into the office (See Exhibit 5). Mr. Casada will not go into the office because this behavior by GDI has put him in fear for his safety.

30. On March 18, 2020, a Human Resources employee from GDI reached out to Mr. Casada and told him about an "Exit Interview" that Mr. Casada needed to participate in. This is not company policy, and Mr. Casada knows that it is a further attempt by GDI to harass and intimidate him.

31. Mr. Casada has suffered harm as a result of GDI's actions toward him.

### COUNT I. DISCRIMINATION BASED ON DISABILITY

Presiding Judge: HON. MARY SHAW (630277)

COM : 000006 of 000013

Filed          20-CI-004930   08/24/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
09/24/2020 09:44:29 AM
89941

32. Plaintiff hereby incorporates each and every allegation of paragraphs one (1) through thirty-one (31), as if fully set forth with particularity herein.

33. KRS § 344.040 makes it an unlawful practice for an employer to fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, … because the person is a qualified individual with a disability. *Kreate v. Disabled American Veterans*, 33 S.W.3d 176, 177 (Ky. Ct. App. 2000).

34. The Kentucky Civil Rights Act ("KRCA") defines disability as "(a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; (b) A record of such an impairment; or (c) being regarded as having such an impairment." KRS § 344.010.

35. Examples of "major life activities include, among other things, walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working." *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003).

36. The term "substantially limited" means: "unable to perform a major life activity that the average person in the general population can perform"; or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity." *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 593 (Ky. 2003).

37. Mr. Casada was perceived as being disabled by GDI and as such is a member of a protected class. Under the above referenced definitions, Mr. Casada was perceived as

Presiding Judge: HON. MARY SHAW (630277)

COM : 000007 of 000013

having a physical impairment that substantially limits one of his major life activities. More specifically, Mr. Casada's perceived disability affected his ability to drive.

38. This activity was significantly restricted as to the condition, manner, and duration under which Mr. Casada could perform this activity as compared to that of an average person in the general population.

39. Mr. Casada was discharged from his employment with GDI. GDI attempted to use "performance issues" as a pretext to terminate Mr. Casada, but in all reality, this was the first time since his heart attack that the company had any "reason" to terminate him.

40. The adverse employment actions taken by GDI were due to Mr. Casada's perceived physical disability, and are in violation of KRS § 344.040, and establish a *prima facie* case for disability discrimination against GDI.

41. Mr. Casada was treated differently than similarly situated employees when GDI terminated his employment after his heart attack.

42. GDI treated employees in a negative manner after they suffered heart attacks. For example, GDI management put pressure on Mr. Casada to fire a Sales Representative who had a heart attack in May of 2019. GDI's management would say "he (the employee) just hasn't been the same since he had the heart attack." The pressure that GDI put on this employee eventually forced the employee to quit. Further, GDI's management thought that an employee who had a heart attack was a burden on the company because of rehabilitation and doctor's appointments.

## COUNT II. FAILURE TO ACCOMMODATE

43. Mr. Casada hereby incorporates each and every allegation of paragraphs one (1) through forty-two (42), as if fully set forth with particularity herein.

44. To establish a *prima facie* case of failure to accommodate, Plaintiff must show: (1) he is disabled within the meaning of the Act; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Brown v. Humana Ins. Co.*, 942 F.Supp.2d 723, 731 (W.D. Ky. 2013).

45. Mr. Casada is disabled within the meaning of the act as he has a physical impairment that substantially limits one or more of his major life activities, specifically it limits his ability to drive.

46. Mr. Casada is qualified for the position, with reasonable accommodation. Mr. Casada had years of prior managerial experience and set GDI company records in the months he was employed at GDI.

47. GDI had reason to know of Mr. Casada's disability, as he took leave and reported what the leave was for to his supervisor.

48. Mr. Casada requested an accommodation upon returning to work from his ten (10) day leave. Mr. Casada gave his doctor's note to his employer and said, "these are my restrictions, so this is what I need to do."

49. GDI failed to provide the necessary accommodation, going as far as telling Mr. Casada that he "needed to make a decision about his job because the company will frown on him not driving for six (6) weeks."

## COUNT III. PROMISSORY ESTOPPEL

50. Mr. Casada hereby incorporates each and every allegation contained in paragraphs one (1) through forty-nine (49), as if fully set forth with particularity herein.

51. Under Kentucky law, the elements of promissory estoppel are: (1) a promise; (2) which the promisor should reasonable expect to induce action or forbearance on the part of the promise; (3) which does induce such action or forbearance ; and (4) injustice can be avoided only by enforcement of the promise." *Res-Care, Inc. v. Omega Healthcare Investors, Inc.*, 187 F.Supp.2d 714, 718 (W.D. Ky. 2001).

52. GDI company policies promise that, if an employee was having performance issues, the employee would be placed on a PIP. Further, if an employee was having behavior issues the company would issue three (3) warnings to the employee, a verbal, a written, and a final.

53. GDI should reasonably expect its employees to rely on GDI company policies.

54. Mr. Casada did rely on that promise, to his detriment, because he was terminated from GDI for "performance," but he was never placed on a PIP. So, Mr. Casada could not have known that his performance was lackluster and could have only known that his performance was an issue through GDI following through on their promise to place Mr. Casada on a PIP.

55. Injustice can only be avoided for Mr. Casada through the enforcement of the promise.

## COUNT IV. FRAUD

56. Mr. Casada hereby incorporates each and every allegation contained in paragraphs one (1) through fifty-five (55), as if fully set forth with particularity herein.

57. Under Kentucky law, the six elements of fraud are as follows: "the defendant (1) made a material misrepresentation; (2) which was false; (3) which was known to be false or made recklessly; (4) which was made with inducement to be acted up; (5) which plaintiff acted

in reliance upon; and (6) which caused the plaintiff injury." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640 (Ky. Ct. App. 2003).

58. GDI made a material representation to Mr. Casada that all of the other Regional Managers covered the Sales Representative Agreement and had no problems.

59. This was false, because the other Regional Managers did not cover the Agreement in its entirety, and instead coerced their employees to sign the Agreement without full disclosure.

60. GDI knew that this representation was false.

61. This was made with inducement to be acted upon because they wanted Mr. Casada to force his employees to sign the Agreement.

62. Mr. Casada did act in reliance upon their statement because he presented the Agreement to his employees, who did not sign it.

63. This caused Mr. Casada injury because his employees refused to sign the Agreement, and as a result Mr. Casada was fired. Mr. Casada's firing was a result of GDI's fraud and was merely a pretext for GDI to fire him due to his heart attack.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Casada, prays that this Court:

1. Declare GDI's conduct is in violation of Mr. Casada's rights and;

2. Award Mr. Casada compensatory damages in such amounts as shall be proven at trial for his economic and other losses;

3. Award Mr. Casada back pay and/or damages equivalent to his lost wages from being unjustly terminated;

Presiding Judge: HON. MARY SHAW (630277)

COM : 000011 of 000013

Filed    20-CI-004930    08/24/2020    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
09/24/2020 09:44:29 AM
89941

4. Award Mr. Casada damages in an amount to be proven at trial for the humiliation, embarrassment, personal indignity, apprehension about his future, emotional distress, and mental anguish which GDI caused Mr. Casada by their illegal and fraudulent actions toward him.

5. Award Mr. Casada costs, interests, and attorney's fees expended herein;

6. Grant Mr. Casada such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff, Mr. Casada, demands a jury to try all issues triable by jury.

Respectfully submitted,

/s/ Samuel G. Hayward
Samuel G. Hayward
ADAMS HAYWARD & WELSH
4036 Preston Highway
Louisville, Kentucky 40213
(502) 366-6456
samuelghayward@hotmail.com

Presiding Judge: HON. MARY SHAW (630277)

COM : 000012 of 000013

Filed          20-CI-004930     08/24/2020        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
09/24/2020 09:44:29 AM
89941

## VERIFICATION

I have read the foregoing statements in the Verified Complaint and they are true and accurate to the best of my knowledge and belief.

_____
William Casada

COMMONWEALTH OF KENTUCKY    )
                            )
COUNTY OF _____   )

Subscribed and sworn to before me by WILLIAM CASADA, this ____ day of ___, 2020.

_____
NOTARY,
STATE-AT-LARGE, KENTUCKY

_____

My Commission Expires: _____

Presiding Judge: HON. MARY SHAW (630277)

COM : 000013 of 000013

Filed          20-CI-004930     08/24/2020        13        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
09/24/2020 09:45:31 AM
89941

| | | |
|---|---|---|
| AOC-E-105    Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    *Courts.ky.gov*<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #:  **20-CI-004930**<br>Court:    **CIRCUIT**<br>County:   **JEFFERSON Circuit** |

*Plantiff,* **CASADA, WILLIAM PATRICK VS. GREAT DAY IMPROVEMENTS LLC**, *Defendant*

TO:   **NATIONAL REGISTERED AGENTS, INC.**
      **306 WEST MAIN STREET**
      **SUITE 512**
      **FRANKFORT, KY 40601**

Memo: Related party is GREAT DAY IMPROVEMENTS LLC

The Commonwealth of Kentucky to Defendant:
**GREAT DAY IMPROVEMENTS LLC**

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.



Jefferson Circuit Clerk
Date: **8/24/2020**

Presiding Judge: HON. MARY SHAW (630277)

---

**Proof of Service**

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

   To: _____

☐ Not Served because: _____

Date: _____, 20 _____     _____
                                                         Served By

                                                         _____
                                                              Title

---

Summons ID: @00000954854
CIRCUIT: 20-CI-004930 Certified Mail
CASADA, WILLIAM PATRICK VS. GREAT DAY IMPROVEMENTS LLC



eFiled

CI : 000001 of 000001

NOT ORIGINAL DOCUMENT
09/24/2020 09:46:01 AM
89941

## Commonwealth of Kentucky
## David L. Nicholson, Jefferson Circuit Clerk

**Case #:** 20-CI-004930 **Envelope #:** 2708833
**Received From:** SAMUEL HAYWARD **Account Of:** SAMUEL HAYWARD
**Case Title:** CASADA, WILLIAM PATRICK VS. GREAT DAY IMPROVEMENTS LLC **Confirmation Number:** 113050419
**Filed On** 8/24/2020 3:38:59PM

| # | Item Description | Amount |
|---|---|---|
| 1 | Access To Justice Fee | $20.00 |
| 2 | Civil Filing Fee | $150.00 |
| 3 | Money Collected For Others(Court Tech. Fee) | $20.00 |
| 4 | Library Fee | $3.00 |
| 5 | Money Collected For Others(Attorney Tax Fee) | $5.00 |
| 6 | Charges For Services(Jury Demand / 12) | $70.00 |
| 7 | Money Collected For Others(Postage) | $12.65 |
| 8 | Charges For Services(Copy - Photocopy) | $1.50 |
| | **TOTAL:** | **$282.15** |

Generated: 8/24/2020                                                                                                          Page 1 of 1